# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO: 4:17-CR-9**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**V.**

**JUSTIN E. DAVIDSON**                                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Suppress [DN 23]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Defendant's Motion to Suppress is **DENIED**.

## I. BACKGROUND

On May 10, 2017, Justin E. Davidson was indicted on a charge of being a felon in possession of a handgun. On November 20, 2017, Davidson moved to suppress certain evidence and statements in the case against him. This Court held an evidentiary hearing on the matter on February 1, 2018. The following evidence was established at the hearing:

On December 11, 2016, Officer Loren Yonts was dispatched to a venue on Triplett Street in Owensboro, Kentucky where a party was taking place. He was told there was a disturbance at the location and someone had brandished a firearm. Officer Yonts arrived at the scene and saw Davidson standing next to an SUV. Davidson looked at Officer Yonts and began walking to a car that was parked on the lot and got into the passenger side of the vehicle. At that time, not knowing whether Davidson was the suspect purported to have a gun, Officer Yonts conferred with individuals who identified themselves as security officers. The security personnel informed Officer Yonts that there had been a disturbance and one of the suspects involved in the disturbance had a weapon. When Officer Yonts asked if they could direct him to the individual

they believed to have a firearm, they pointed out Davidson and said, "He's the one that got in the car when you pulled up." They also referenced the spot where Davidson was seen standing when Officer Yonts arrived and stated, "Well, right there, at the front wheel, he put the gun down right there."

Not knowing whether Davidson may have still been armed at this point, Officer Yonts made contact with Davidson. He got Davidson out of the car, did a quick pat-down search to make sure he did not have a weapon on him and asked what was going on. Davidson responded that he did not know anything about the disturbance or a weapon. Then, once Officer Yonts was satisfied that Davidson did not have a weapon on him, he went to the SUV where Davidson allegedly put the gun. Officer Yonts described the SUV as having taller rims which allowed him to see the weapon in plain sight. He secured the weapon, which he found to be loaded, and ran the serial number to determine whether it was stolen. At this point in time, several other police officers had arrived on the scene. Officer Yonts also checked a second time with the venue security officers to make sure they had seen what they had described before. They confirmed they saw Davidson with the weapon and then saw him place it down on the SUV once Officer Yonts arrived on the scene. Officer Yonts also learned through police records that the weapon was stolen and that Davidson was a convicted felon.

At this point, Officer Yonts believed he had probable cause to arrest Davidson for possession of a stolen firearm. As he arrested Davidson, Officer Yonts explained the charges against him. Both Officer Yonts and another police officer who had arrived at the scene, Officer Shartez McHenry, escorted Davidson to the police cruiser. Davidson continued to ask why he was being arrested. Again, Officer Yonts explained the charges. During this time, Officer Yonts may have also asked Davidson for some basic information, such as his name and address. Then,

as Officer McHenry was helping Davidson into the police cruiser, Davidson asked her, "What am I going to do now?" Officer McHenry admits that she knew Davidson previously, both having grown up in Owensboro. She recommended that Davidson get a lawyer. At that point, Davidson offered up the statement, "I know I was in possession of it…" Surprised by this statement, Officer Yonts asked Davidson, "What did you just say to her?" Davidson denied that he had said anything and insisted that the gun was not his.

Justin Davidson was indicted by a grand jury with one count of possession of a handgun by a convicted felon. His counsel moves the Court to suppress "any and all evidence and statements from Mr. Davidson on December 11, 2016."

## II. APPLICABLE LAW

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The United States may not, therefore, use statements stemming from a custodial interrogation without first demonstrating the use of procedural safeguards effective to secure the privilege of self-incrimination. *Miranda v. Arizona* 385 U.S. 436 (1966).

> *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.

*R.I. v. Innis*, 446 U.S. 291, 301 (1980).

For example, in *Rhode Island v. Innis*, a man was arrested after he was suspected of murdering a taxi driver with a sawed off shotgun. While in route to the police station, the accused was placed in the back of a squad car. In the front seats of the car, two police officers engaged in a conversation about the shotgun with which the suspect allegedly killed the taxi

driver. The accused then interrupted the officer's conversation, stating that they could turn the car around and he would show them where the shotgun was located. When faced with a similar question of whether the accused was subjected to custodial interrogation at the time of his confession, the Supreme Court determined that the accused was not interrogated because the officer could not have reasonably suspected that Innis would have made such a response amidst their short conversation.

### III. DISCUSSION

In this case, Davidson argues that any statements he made must be suppressed because he was not given his *Miranda* rights in violation of the Fifth Amendment. Indeed, the United States conceded that no *Miranda* warnings were provided to Davidson during his arrest. The United States, however, argues that no such warnings were necessary because Davidson was not subject to custodial interrogation at the time he made the statement, "I know I was in possession if it."

The Court agrees that Davidson was not being interrogated when he made the incriminating statement. Earlier that night, Davidson was questioned after Officer Yonts first approached him to perform a pat down and asked what he knew about the situation. After this initial interview, Officer Yonts ceased his interrogation of Davidson and went to look for the weapon and speak again to security personnel. Only later, after it became clear to Office Yonts that there was probable cause to arrest Davidson, was Davidson placed under arrest and escorted to the police cruiser.

Davidson argues that the United States cannot meet the burden of proving that his statements did not violate his Fifth Amendment rights, contending that the testimony about the conversation between him and the officers that took place on the way to police cruiser is "extremely vague." (Brief in Support of Suppression Hearing [DN 33] at 3.) When first asked,

Officer Yonts denied that he asked Davidson any questions after placing him under arrest. When pressed again, Officer Yonts confirmed that he did ask Davidson questions, but only on basic information such as name and address. The Court finds that, regardless of whether Officer Yonts asked Davidson for his name and address at some point after his arrest, Davidson was not being interrogated at the time of his statement. Because the statement that "I was in possession of it" was offered by Davidson without express questioning or any words or actions of the officers that were reasonably likely to elicit an incriminating response, the statement cannot be said to have been made during custodial interrogation. As such, *Miranda* warnings were not necessary to protect Davidson against self-incrimination.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 29, 2018

cc: counsel of record